# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Anthony Maffei | Perkiomen Valley School District, a Pennsylvania governmental entity, et al. |

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Carmen A. De Gisi, De Gisi Law Group, LLC, 462 Germantown Pike, Suite 11, Lafayette Hill, PA 19428 (610) 897-8721

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981; 42 U.S.C. § 1983; 20 U.S.C. § 1232
Brief description of cause:
Violations of substantive due process rights under the Equal Protection Clause of the Fourteenth Amendment and parental rights

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 1,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Montgomery County, PA

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit? Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **see certification below**
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☐ **does not** have implications beyond the parties before the court and ☐ **does** / ☐ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY MAFFEI                              : | |
| 45 Spring Mount Road                        : | |
| Schwenksville, PA 19473                     : | Civil Action No.: 2:24-cv-5824 |
|           Plaintiff,   : | |
|                : | **JURY TRIAL DEMANDED** |
|     v.                   : | |
|                : | |
| PERKIOMEN VALLEY                            : | |
| SCHOOL DISTRICT                             : | |
| 3 Iron Bridge Drive                         : | |
| Collegeville, PA 19426                      : | |
|                : | |
|      and            : | |
|                : | |
| MERCEDI LUTZ-BENNETT                        : | |
| 25 Ryan Court                               : | |
| Telford, PA 18969                           : | |
|          Defendants : | |

## COMPLAINT - CIVIL ACTION

Plaintiff, Anthony Maffei ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Perkiomen Valley School District ("Defendant School District") and Mercedi Lutz-Bennett ("Defendant Lutz-Bennett ") (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.      This action is brought to remedy violations of civil rights as secured by 42 U.S.C. § 1981 ("§ 1981"); the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States through 42 U.S.C. § 1983 ("§ 1983"), 20 U.S.C. § 1232, Consent to Medical Care Act, 35 P.S. § 10101, et. seq. and Common Law to Right of Consent.

2.      More specifically, Plaintiff seeks redress for the actions of the Defendant School District and Defendant Lutz-Bennett  for depriving him of his rights as a parent with legal custody and for injuries to himself and interference in his legal custody of his minor children, E.M. and

1

F.M.  Plaintiff seeks redress for the involvement of Defendant Lutz-Bennett in his divorce and child custody proceedings by conspiring with his ex-wife to influence a child custody decision in her favor through secretly counseling his children without his consent or knowledge, coaching and preparing his children for testimony and child custody evaluations, and manufacturing testimony that Plaintiff was abusive to his children and ex-wife.[1]

3.      Consequently, Plaintiff prays for injunctive and declaratory relief; economic, compensatory, and punitive damages[2]; attorneys' fees, and all other appropriate relief pursuant to governing law(s).

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

5.      This Court may properly maintain personal jurisdiction over the Defendants because their contact with this State and this judicial district are sufficient for the exercise of jurisdiction- complying with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S, 310 (1945), and its progeny.

---

[1] "The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." Pierce v. Society of Sisters, 268 U.S. 510 (1925). Thereafter, in Stanley v. Illinois, 405 U.S. 645 (1972), this Court affirmed the fundamental rights of parents "in the companionship, care, custody, and management" of their children. Id. at 651. That same year, in Wisconsin v. Yoder, 406 U.S. 205 (1972), the Court declared that "[t]his primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Id.* at 232.

[2] Against Defendant Lutz-Bennett  in their individual capacities under § 1981 and § 1983 only.

6.      Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and defendants are deemed to reside where they are subject to personal jurisdiction, rendering the Defendants "residents" of the Eastern District of Pennsylvania.

### PARTIES

7.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.      Plaintiff is an adult citizen of the United States and is a resident of Schwenksville, Pennsylvania.

9.      At all times relevant to this action, Plaintiff was the father of two minor children, E.M. and F.M, and shared legal custody of the children with his ex-wife, Christina Angello ("Former Spouse").

10.      At all times relevant to this action, E.M. and F.M. were students at Skippack Elementary School, which is operated by the Perkiomen Valley School District and is located in Collegeville, Pennsylvania.

11.      Defendant School District is a special district organized under the laws of Pennsylvania with a principal place of business in Montgomery County, Pennsylvania.

12.      Defendant Lutz-Bennett  is a resident of Montgomery County Pennsylvania and was employed as a school counselor at Skippack Elementary School, which is operated by the Defendant School District, from March 2019 to May or June 2022.

13.      At all times relevant to this action, Defendant School District was the "employer" of the Defendant Lutz-Bennett  a governmental entity acting under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania.

14.     Defendant School District and Lutz-Bennett  caused the violations set forth in this Complaint.

15.     Defendant School District failed to adequately train its employees to prevent and/or correct the violations set forth in this Complaint[3].

16.     Defendant School District failed to adequately supervise its employees including Defendant Lutz-Bennett  to prevent and/or correct the violations set forth in this Complaint[4].

17.     Defendant School District failed to prevent and aided and abetted in the violations set forth in this Complaint.

18.     Upon information and belief, Defendants engaged in a pattern and practice of persistent and widespread constitutional and statutory violations as set forth in this Complaint.

19.     Upon information and belief, Defendant Lutz-Bennett  conspired with others including Plaintiff's ex-wife to engage in the violations set forth in this Complaint.

## FACTUAL ALLEGATIONS

20.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21.     Prior to the 2019-2020 school year, Plaintiff and Former Spouse notified the staff of Skippack Elementary, including Principal Leslie Nassoiy, of their pending divorce proceedings and child custody order providing legal custody to both parents and a physical custody schedule for the children.

---

[3] The school personnel's actions disregarded the known risks to E.M..'s mental health, exacerbating her conditions by coaching her to accuse Plaintiff of abuse without professional oversight and parental knowledge.

22.     After the first custody order was entered in August 2020, Plaintiff and Former Spouse notified the staff of Skippack Elementary, including Principal Nassoiy, of the child custody order providing legal custody to both parents and a physical custody schedule for the children.

23.     Plaintiff and Former Spouse notified the staff of Skippack Elementary, including Principal Nassoiy, of any subsequent changes to the physical custody schedule for the children.

24.     At all material times, Defendant School District, Defendant Lutz-Bennet, and the staff of Skippack Elementary knew that Plaintiff and Former Spouse had separated, divorced, shared legal custody of E.M. and F.M. and that they were required to obtain consent from both parents before providing any type of counseling to either child.

25.     Upon information and belief, Defendant Lutz-Bennett worked for Defendant School District as a school counselor from March 2019 until May or June 2022, when she was either terminated or forced to resign.

26.     Upon information and belief,  Defendant Lutz-Bennett was hired and employed by Defendant School District to provide counseling services to students at Skippack Elementary whose parents had consented to counseling services.

27.     Throughout her employment at the Defendant School District, Defendant Lutz-Bennett  reported to the Principal of Skippack Elementary, Dr. Leslie Nassoiy, and the Superintendent of School, Dr. Barbara Russell.

28.     Upon information and belief, Former Spouse struck up a personal relationship with Defendant Lutz-Bennet shortly after she started her employment at Skippack Elementary.

29.     In July 2019, Plaintiff initiated an action in divorce against Former Spouse in Montgomery County, Pennsylvania.

30.     Thereafter and continuing to the present, the relationship between Plaintiff and Former Spouse has been publicly acrimonious and hostile and common knowledge to the entire staff of Skippack Elementary, the parents of students, and the wider community.

31.     Since the initiation of divorce and custody proceedings, Plaintiff has always shared legal custody of the children with Former Spouse although primary physical custody was initially awarded to Former Spouse.

32.     Upon information and belief, Former Spouse privately informed Defendant Lutz-Bennett that Plaintiff shared legal custody of the children but wanted 50/50 physical custody and alimony as well.

33.     Upon information and belief, Former Spouse conspired with Defendant Lutz-Bennett to help limit and/or terminate Plaintiff's legal and physical custodial rights, for the benefit of Former Spouse and to the detriment of Plaintiff and his children.

34.     Upon information and belief, Defendant Lutz-Bennett agreed to secretly counsel EM, who was in first grade during the 2019-2020 school year, without Plaintiff's consent or knowledge so that Defendant Lutz-Bennett could prepare them to testify falsely in favor of Former Spouse at any future custody hearings and to coach them ahead of a court-mandated custody evaluation to determine whether Plaintiff would receive 50/50 physical custody.

35.     Thereafter, Defendant Lutz-Bennett began counseling E.M. during school hours without the consent or knowledge of Plaintiff, despite being informed by Former Spouse that Plaintiff had legal custody, in order to terminate or at least limit his share of physical custody of the children to the financial benefit of Former Spouse.

36.     In August 2020, the first custody order was entered by the court continuing shared legal custody and awarding Former Spouse primary custody with limited physical custody for Plaintiff despite his efforts to get 50/50 physical custody.

37.     Having successfully interfered with the first custody order, when F.M. began attending Skippack Elementary as a kindergartner during the 2020-2021 school year, Defendant Lutz-Bennett likewise began counseling F.M. during school hours without the consent or knowledge of Plaintiff, despite knowing that Plaintiff had legal custody, in order to terminate or at least prevent him from getting 50/50 physical custody.

38.     Over the course of the 2020-2021, 2021-2022 academic school years and at least until October 2022, Defendant Lutz-Bennett secretly counseled both E.M. and F.M. during school hours, outside of school over the telephone when they were at their mother's house, and during visits to their mother's home.

39.     To further assist Former Spouse in alienating the affections of his children and to limit or terminate plaintiff's physical custody of his children, Defendant Lutz-Bennett referred the children to Brightside Counseling LLC to receive counseling services from Alphonso Nathan, LPC ("Mr. Nathan").

40.     Upon information and belief, Mr. Nathan and Defendant Lutz-Bennett had a preexisting personal relationship and Defendant Lutz-Bennett knew that Mr. Nathan would be sympathetic to Former Spouse's intention to limit or terminate Plaintiff's physical custody.

41.     Upon information and belief, Defendant Lutz-Bennett regularly discussed the counseling services provided to E.M. and F.M. by Mr. Nathan and the confidential communications between Mr. Nathan and E.M. and FM, without the knowledge or consent of Plaintiff.

42.     To further prepare the children for a custody evaluation and to testify in favor of their mother at any custody hearings, Defendant Lutz-Bennett referred Former Spouse to Annete Moyer, SAP Liaison at Creative Health Services,  Inc. in Spring City, Pennsylvania for additional counseling for the children.

43.     Upon information and belief, Defendant Lutz-Bennett additionally referred Former Spouse to Jacqueline LaPorta, LPC for individual and family counseling and she regularly discussed the counseling services provided to E.M. and F.M. by LaPorta and the confidential communications between Mr. Nathan and E.M. and FM, without the knowledge or consent of Plaintiff.

44.     Defendant Lutz-Bennett and Defendant School District never sought Plaintiff's consent to refer his children for outside counseling services and Plaintiff did not authorize them to discuss their counseling and private health information with Mr. Nathan, Creative Health Services, Inc, or Jacqueline LaPorta.

45.     On October 31, 2022, a court-ordered child custody evaluation ("Evaluation")was completed by Constance Mesiarik, Ph.D., J.D., and submitted to Plaintiff's counsel.

46.     Plaintiff learned for the first time from reading the Evaluation that his children had been counseled by Defendant Lutz-Bennett for the past three years without his knowledge or consent.

47.     In fact, Dr. Mesiarik's interview of Defendant Lutz-Bennett revealed many shocking admissions from Defendant Lutz-Bennett including that:

    a.    Defendant Lutz-Bennett tried to meet with E.M. "at least daily, even if just briefly";

    b.    EM wrote in a journal that Defendant Lutz-Bennett kept in her office;

    c.    Defendant Lutz-Bennett roleplayed with E.M. in her office.

8

d.  Defendant Lutz-Bennett counseled E.M. on the custody dispute between Plaintiff and Former Spouse and EM's testimony;

e.  Defendant Lutz-Bennett had E.M. come to her office to prepare EM's testimony for court by writing in the journal so that E.M. could bring it to court; and

f.  Defendant Lutz-Bennett and Former Spouse would communicate via text about E.M. but Defendant Lutz-Bennett never heard from Plaintiff or his wife to check on E.M.

48.  Following these shocking revelations, Plaintiff contacted Dr. Barbara Russell, Superintendent of Defendant School District, to provide her with a copy of Defendant Lutz-Bennett's interview in the Evaluation, to express his extreme displeasure with Defendant School District and Defendant Lutz- Bennett, and to insist that he be contacted before any school official met with either of his children going forward.

49.  Plaintiff additionally inquired about the location of the journal that the Evaluation disclosed Defendant Lutz-Bennett kept in her office for E.M. to prepare her testimony for court.

50.  On December 3, 2022, Dr. Russell responded "I did meet with Mrs. Nassoiy and have learned more about your situation. I wanted to let you know that I plan to follow up with you again with more details next week."

51.  Having not received more information, Plaintiff followed up on December 12, 2022 via email to Dr. Russell and wrote:

I am still waiting on the information that was obtained by Mrs Nassoiy about what was happening during my children's encounters with Mercedes Lutz-Bennett last school year. I need to know the specific times and dates they were seeing the school counselor. Due to the information shared about the journal making for "court" purposes during school hours, I also need to know what was being discussed during their sessions. This is imperative. [EM] also informed me there were multiple home visits to their mother's made by Mrs. Lutz Bennett during the school year. As you are aware, I was not once informed of any meetings with Mrs. Lutz-Bennett during the school day and you can only imagine the delicacy of this sensitive matter. I am worried about the emotional damage this has taken on my children,

especially [EM]. We have court coming up and any information would be helpful to advocate for my children during this time.

52.     Dr. Russell responded by attaching a 27-page document titled *Counselor File Contents_Maffei_FERPA Request_2022* ("Counselor File") and denied any knowledge of a journal maintained by Defendant Lutz-Bennett in her office for E.M.

53.     Despite Defendant Lutz- Bennett's admission that she started counseling E.M. during the 2019/2020 school year, the Counselor File did not contain any notes or documents dated prior to February 2021 and its contents made it clear that there were multiple emails with Former Spouse that were wholly missing and others that were intentionally withheld from Plaintiff.

54.     Notwithstanding the incomplete nature of the Counselor File, Plaintiff was even further shocked and disturbed by its revelations of a systematic campaign involving Defendant Lutz-Bennett and the staff at Skippack Elementary to interfere with his custody rights and to influence the outcome of the custody proceedings in favor of Former Spouse by coaching his children's testimony and child custody interviews.

55.     The Counselor File, despite being censored and incomplete, revealed that by February 2021 Defendant Lutz-Bennett and Former Spouse had begun preparing E.M. and F.M. to testify in court so that Former Spouse could get more child support from Plaintiff.

56.     The Counselor File further disclosed, *inter alia*, that:

   a. Defendant Lutz-Bennett referred Former Spouse to Brightside Counseling, LLC and Creative Health Services, Inc. in order to prevent Plaintiff from increasing his physical custody of the children.

   b. Defendant Lutz-Bennett discussed the children's private treatment information with outside counselors, Mr. Nathan and Ms. LaPorta.

   c. Former Spouse would notify Defendant Lutz-Bennett of any custody hearings and evaluation dates in advance so that Defendant Lutz-Bennett could meet with the children ahead of time to prepare their testimony and interview responses.

   d. Defendant Lutz-Bennett and Former Spouse would discuss how to interfere with the outcome of the custody proceedings without being caught.

e.  At the request of Former Spouse, Defendant Lutz-Bennett had staff at Skippack Elementary watch the children on Plaintiff's physical custody days and report back any information that could be used against him in the custody proceedings.

f.  At the request of Former Spouse, Defendant Lutz-Bennett monitored the ParentVue website in order to notify Former Spouse if Plaintiff added additional adults to the approved list of people authorized to pick the children up from school.

g.  Defendant Lutz-Bennett had Former Spouse execute release forms so that Defendant Lutz-Bennett could speak with their therapists but did not seek consent from Plaintiff and did not inform him.

h.  When notified by Former Spouse that Plaintiff was "coming after 50/50" physical custody and alimony, Defendant Lutz-Bennett direct Former Spouse to create a timeline when Defendant Lutz-Bennett should meet with the children to prepare them to testify in favor of Former Spouse.

i.  On the morning of one of the custody hearings, Defendant Lutz-Bennett emailed Former spouse to wish her good luck and let her know that she was thinking of her.

j.  Defendant Lutz-Bennett regularly counseled E.M. over the telephone on days when the children were at the home of Former Spouse.

k.  Defendant Lutz-Bennett and Former Spouse regularly emailed, texted, and called each other to discuss the custody proceedings and preparing the children to testify and interview.

l.  Former Spouse would provide Defendant Lutz-Bennett with testimony to coach the children to testify against, including claims of Plaintiff being physically violent and threatening towards his children.

57.    The Counselor File provided to Plaintiff by Defendant School District is also shocking in that it did not contain an email from Plaintiff to Defendant Lutz-Bennett on March 15, 2022 wherein Plaintiff emailed Defendant Lutz-Bennett to ask about school-based counseling or a SAP referral for the children.

58.    In her response, Defendant Lutz-Bennett did not disclose that she was counseling the kids or that she had already provided an SAP referral to Former Spouse.  Instead, she recommended the kids continue to see Mr. Nathan and failed to reveal that she had referred the children to him and was communicating with Mr. Nathan about the children's counseling sessions without Plaintiff's knowledge or consent.

11

59.     Upon information and belief, Defendant Lutz-Bennett did not disclose the prior SAP referral in order to conceal her conspiracy with Former Spouse to limit or terminate Plaintiff's custodial rights and thwart his attempts to be awarded alimony.

60.     The Counselor File provided to Plaintiff by Defendant School District also did not contain the August 2022 email discussion between Plaintiff and Principal Nassoiy wherein:

    a.    Plaintiff asked how to add his wife and mother as authorized adults to pick up his children on custodial days because every time he did Former Spouse would mark "NO" indicating they were persons specifically excluded from picking them up.

    b.   Principal Nassoiy confirmed that the school was aware that Plaintiff had shared legal custody but claimed the school did not have a copy of the physical custody order.

    c.   Plaintiff responded with a copy of the custody order and requested attendance reports because Former Spouse had repeatedly pulled the kids on his custodial days.

    d.   Plaintiff further inquired whether Skippack Elementary provided school-based counseling because E.M. told him that Defendant Lutz-Bennett was doing home visits with his children and Defendant Lutz-Bennett had been to their mother's home a couple times that summer including the prior week.

    e.   Principal Nassoiy informed Plaintiff that Defendant Lutz-Bennett was no longer employed by Defendant School District, that she resigned at the end of the 2021-2022 school year, and that Principal Nassoiy had not had any contact since her departure.

61.     Upon information and belief, Defendant Lutz-Bennett continued to counsel Plaintiff's children at their mother's home after the end of the 2021-2022 school year and the termination of her employment with Defendant School District

62.     Despite knowing of the acrimonious divorce and that Plaintiff had shared legal custody of E.M. and FM, neither Defendant School District nor Defendant Lutz-Bennett ever informed Plaintiff that Defendant Lutz-Bennett was providing counseling services to his children, referring his children to outside counselors, receiving reports from those counselors about his children, and preparing his children to testify in custody hearings and coaching their interview responses during custody evaluations.

63.     As a result, Plaintiff had no knowledge that E.M. and F.M. were receiving counseling from Defendant Lutz-Bennett let alone that the staff were monitoring his children on his custodial days, and that Defendants were interfering in the custody proceedings to influence the outcome in favor of Former Spouse.

64.     Had Dr. Mesiarik not interviewed Defendant Lutz-Bennett for the Evaluation, Plaintiff would still be unaware that Defendant Lutz-Bennett had counseled his children for years without his consent.

65.     The Evaluation and censored Counselor File make it clear, however, that Defendant Lutz-Bennett and Defendant School District knew that Plaintiff had legal custody and shared physical custody of his children and that Defendant Lutz-Bennett and the staff at Skippack Elementary conspired with his Former Spouse to limit or terminate his physical custody and financially benefit Former Spouse by increasing her child support and preventing an alimony award to Plaintiff.

66.     The Evaluation and censored Counselor File further demonstrate the Defendant Lutz-Bennett coached the children to testify and provide interview responses that would influence the outcome of the custody proceedings to benefit Former Spouse, including allegations of physical abuse by Plaintiff, and that the communications and counseling sessions increased around the dates of custody hearings and evaluations.

67.     Due to the actions of Defendant Lutz-Bennett and Defendant School District, Plaintiff was required to spend thousands of dollars retaining lawyers and counselors to defend himself and retain custody of his children.

68.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' acts unless and until this Court grants the relief requested herein.

**COUNT I**
**Violation of the Fifth and Fourteenth Amendments**
**Substantive Due Process**
**Plaintiff v. All Defendants**

69.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.     Under the Fourteenth Amendment, Plaintiff has a fundamental liberty interest in making child-rearing decisions. *Tatel v. Mt. Lebanon Sch. Dist.*, 2022 WL 15523185, at *11 (W.D. Pa. Oct. 27, 2022) ("The parental right to custody, control and nurture of their children is deeply rooted and implicit in the United States' concept of ordered liberty.").

71.     "The right of parents to raise their children without undue state interference is well established." *Gruenke v. Seip*, 225 F.3d 290, 303 (3d Cir. 2000).

72.     The right to make decisions concerning the care, custody, and control of one's children "is perhaps the oldest fundamental liberty interest recognized." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

73.     This includes the "fundamental constitutional right to right to control the inculcation of values in their children," *Tatel,* 2022 WL 15523185 at *23, and to make educational choices[5]. *Troxel*, 530 U.S. at 65.

---

[5] *Washington v. Glucksberg*, 521 U.S. 702 (1997), held that the Constitution, and specifically the Due Process Clause of the Fourteenth Amendment, protects the fundamental right of parents to direct the care, upbringing, and education of their children. Id. at 720.

74.     The Third Circuit recognizes that through this liberty interest, "parents, not schools, have the primary responsibility to inculcate moral standards, religious beliefs, and elements of good citizenship." *C.N. v. Ridgewood Board of Education*, 430 F.3d 159, 185 (3d. Cir. 2005).

75.     The Third Circuit further recognizes that "School-sponsored counseling and psychological testing that pry into private family activities can overstep the boundaries of school authority and impermissibly usurp the fundamental rights of parents to bring up their children, as they are guaranteed by the Constitution." *Gruenke*, 225 F.3d at 307.

76.     Defendant School District served an exclusively public function and Defendant Lutz-Bennett acted or failed to act under color of state law.

77.     Defendants actions violated Plaintiff's fundamental liberty interest to make decisions concerning the care, custody, and control of his children.

78.     Defendants violated Plaintiff's fundamental liberty interest by, among other things, (i) failing to obtain Plaintiff's consent to provide counseling services to his children, (ii) secretly counseling Plaintiff's children in order to coach and manufacture testimony in support of Former Spouse's custodial rights, (iii) secretly interfering in the outcome of custody proceedings in order to limit or terminate Plaintiff's custodial rights, (iv) interfering in the relationship between Plaintiff and his children.

79.     Defendants have acted with reckless disregard for Plaintiff's fundamental rights guaranteed under the Fourteenth Amendment.

80.     Defendant Lutz-Bennett's efforts to limit and/or terminate his custodial rights and manufacture testimony against him was objectively unreasonable, malicious and sadistic, intended to cause harm, and without any legitimate educational or counseling purpose.

15

81.     Defendants knowingly deprived Plaintiff of his right under the Fourteenth Amendment to make significant medical, psychological, and custodial decisions concerning his children.

82.     Defendants' acts and omissions amount to deliberate indifference that shocks the conscience, deprived Plaintiff of his Fourteenth Amendment rights to make significant medical, psychological, and custodial decisions concerning his children, was a substantial departure from professional judgment, and caused Plaintiff grave emotional, psychological, and other harm.

83.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' acts unless and until this Court grants the relief requested herein.

## COUNT II
### Violation of Statutory Rights under 20 U.S.C. § 1232
### Plaintiff v. All Defendants

84.     Plaintiff incorporates the previous paragraphs by reference.

85.     Defendants' actions, as set forth above, have violated the civil rights of the Plaintiff, which Defendants unreasonably failed to prevent, remedy, and/or correct.

86.     Under 20 U.S.C. § 1232h, without the prior written consent of a parent, the School District shall not submit any student to any analysis or evaluation that reveals information concerning, among other things, (a) mental or psychological problems of the student or student's family, and (b) critical appraisals of other individuals with whom the student has a close family relationship.

87.     20 U.S.C. § 1232h confers an individual right on parents to control whether their child will be subject to such evaluations and examinations by requiring  the School District to obtain express written consent from a parent before performing them.

16

88.     Without Plaintiff's consent or knowledge, Defendants subjected his minor children to several years of psychological counseling and evaluations that revealed information concerning mental or psychological problems of the children or their family and critical appraisals of other individuals with whom his children shared close family relationships.

89.     42 U.S.C.A § 1983 permits Plaintiff to bring suit for the deprivation of rights or privileges conferred under the laws of the United States.

90.     Defendants have violated Plaintiff's rights under 20 U.S.C. § 1232h, which is  law of the United States.

91.     Defendant School District served an exclusively public function and Defendant Lutz-Bennett acted or failed to act under color of state law.

92.     Defendant Lutz-Bennett's efforts to intentionally counsel Plaintiff's children without his knowledge and consent in order to limit and/or terminate his custodial rights and manufacture testimony against him was objectively unreasonable, malicious and sadistic, intended to cause harm, and without any legitimate educational or counseling purpose.

93.     Defendants' acts and omissions amount to deliberate indifference that shocks the conscience, deprived Plaintiff of his Fourteenth Amendment rights to make significant medical, psychological, and custodial decisions concerning his children, was a substantial departure from professional judgment, and caused Plaintiff grave emotional, psychological, and other harm.

94.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' acts unless and until this Court grants the relief requested herein.

95.     No previous application has been made for the relief requested herein.

## COUNT III
## Violation of Common Law Right of Parental Consent
## Plaintiff v. All Defendants

96.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

97.     Pennsylvania recognizes a common law right that parental consent must be secured before medical treatment is provided. *Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.*, 646 A.2d 689, 691 (Pa. Cmwlth. 1994) ("The principle that parental consent must be secured before medical treatment provided is time honored and has been recognized by both the courts and the legislature.").

98.     Defendants never informed Plaintiff or secured his consent before providing psychological counseling services and care to his children.

99.     Defendants wrongful acts and conduct were done with deliberate indifference to Plaintiff's statutory and constitutional rights.

100.    Plaintiff has been harmed by Defendants' breach of his common law parental rights.

101.    As a direct and proximate result of Defendants' acts and conduct, which caused and continued to cause Plaintiff to be denied equal protection under the law, Plaintiff has suffered and will continue to suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees and costs in defending his custodial rights in court.

## COUNT IV
## Violation of the Minors' Consent to Medical Care Act, 35 P.S. § 10101, et. seq.
## Plaintiff v. All Defendants

102.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

103.    Under the Minors' Consent to Medical Care Act, parental consent is required before medical treatment is provided to a minor under 18 years of age. 35 P.S. §§ 10101-10105.

104.    Defendants violated the Minors' consent to Medical Care Act by failing to seek and obtain Plaintiff's consent to provide mental health care to his children before treating his children over the course of three years.

105.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants acts unless and until this Court grants the relief requested herein.

**COUNT IV**
**Intentional Infliction of Emotional Distress**
**Plaintiff v. Defendant Lutz-Bennett**

106.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

107.    Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate "intentional outrageous or extreme conduct by the defendants, which causes severe emotional distress to the plaintiff." Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

108.    Without the Plaintiff's knowledge or consent, Defendant Lutz-Bennett, a school counselor, conspired with Former Spouse to secretly counsel his children and coach them to testify unfavorably regarding Plaintiff in order to influence a custody dispute and alimony award in favor of Former Spouse.

109.    For years, Defendant Lutz-Bennett conspired with Plaintiff's Former Spouse to create allegations of child abuse and neglect to sabotage child custody court proceedings against Plaintiff.

110.    Under the color of authority bestowed to her by the Defendant School District, contrary to ethical boundaries, the law, and in violation of Plaintiff's constitutional rights, Defendant Lutz-Bennett counseled E.M. and F.M. on how to testify to the Court and its officials about fabricated acts of violence, abuse, and neglect committed by Plaintiff to sway the court to limit or terminate Plaintiff's custodial rights.

111.    Instead of counseling Plaintiff's children for a legitimate purpose, with full knowledge that the allegations against Plaintiff were fabricated by Former Spouse, Defendant Lutz-Bennett coached E.M. and F.M. to testify in custody hearings and evaluation that their father was abusive and neglectful, putting him at peril for losing custody of his children and potentially being charged criminally.

112.    Due to Defendant Lutz-Bennett's outrageous conduct, Plaintiff's fitness as a parent was called into question and he was forced to address false allegations of child abuse and endangerment by hiring experts and expending thousands of dollars in legal fees.

113.    Due to Defendant Lutz-Bennett's outrageous conduct, Plaintiff suffered severe emotional distress as he battled his Former Spouse for 50/50 custody of his children.

114.    As a direct and proximate result of Defendant Lutz-Bennett's actions coordinated with Plaintiff's Former Spouse, Plaintiff has suffered severe emotional distress, including depression and anxiety, requiring medical care.

115.    Plaintiff's emotional distress was foreseeable.

116.    Defendant's conduct was the direct and proximate cause of Plaintiff's emotional distress.

117.    As a direct and proximate result of the outrageous conduct set forth in this Complaint, Plaintiff suffered severe mental anguish, inconvenience, loss of the capacity for the

enjoyment of life, and embarrassment associated with the same, loss of earnings, incurred medical and psychological care expenses for his care and treatment along with attorneys' fees to defend his custodial rights. These injuries are either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

**COUNT VI**
**Negligent Infliction of Emotional Distress**
**Plaintiff v. Defendant Lutz-Bennett**

118.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

119.     Under Pennsylvania law, negligent infliction of emotional distress "is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger . . . or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp*., 961 A.2d 192, 197-198 (Pa. Super. Ct. 2008).

120.     Without care or thought regarding Plaintiff's mental health, Defendant Lutz-Bennett counseled Plaintiff's children to testify to false allegations of child abuse, neglect, and/or endangerment against Plaintiff.

121.     At the behest of Former Spouse, Defendant Lutz-Bennett engaged in a malicious effort to undermine the integrity of a court proceeding and engineer a finding against Plaintiff that could cost him legal and physical custody of his children.

122.     As a result of Defendant Lutz-Bennett's actions to generate false claims of child abuse, neglect, and/or endangerment against Plaintiff, Plaintiff's children suffered emotional distress over the course of several years requiring psychological counseling.

123.    Unaware of the cause of his children's emotional distress, Plaintiff was unable to protect them from Defendant Lutz-Bennett's manipulation and could only watch his children suffering and their mental health deteriorate.

124.    Plaintiff witnessed and/or contemporaneously sensed and observed the negligent conduct and injury producing manipulation that caused physical injury to his children, while in the presence and view of his children and the events described herein.

125.    Plaintiff was keenly aware of his children's injuries and experienced, firsthand and contemporaneously, the injuries as they occurred.

126.    Plaintiff suffered and continues to suffer from the traumatic impact of contemporaneously witnessing and experiencing his children's pain and suffering caused by Defendant Lutz-Bennett's negligence and the secret manipulation of his children. His awareness and observations have resulted in the infliction of emotional distress upon her.

127.    Witnessing the above-described injuries to his children caused Plaintiff to suffer physical injury, including severe emotional shock and trauma, and psychological injury.

128.    Plaintiff continues to experience effects of that physical injury, emotional trauma, and shock and will continue to so suffer in the future, and is, therefore, entitled to recover damages in his own right for their physical injury and emotional distress under the law as stated in *Sinn v. Burd*, 404 A.2d 672 (Pa. 1979), and its progeny, including *Pearsall v. Emhart Industries, Inc*., 599 F.Supp. 207 (1984).

129.    By her actions, Defendant knew, or should have known, that manipulating the children to generate false claims of child abuse, neglect, and/or endangerment against their father would cause severe trauma to the children and put them at risk of illness and/or bodily harm.

130.    Defendant's conduct created an unreasonable risk of causing Plaintiff emotional distress by forcing him to watch the mental health of his children deteriorate as they were being asked and coached to lie about their father.

131.    As a direct and proximate result of Defendant Lutz-Bennett's actions coordinated with Plaintiff's Former Spouse, Plaintiff has suffered severe emotional distress, including depression and anxiety, requiring medical care.

132.    Plaintiff's emotional distress was foreseeable.

133.    Defendant's conduct was the direct and proximate cause of Plaintiff's emotional distress.

134.    As a direct and proximate result of the conduct set forth in this Count, Plaintiff suffered severe mental anguish, inconvenience, loss of the capacity for the enjoyment of life, and embarrassment associated with the same, loss of earnings and earning capacity, incurred medical and psychological care expenses for his care and treatment. These injuries are either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

### COUNT VII
### Negligence
### <u>Plaintiff v. Defendant Lutz-Bennett</u>

135.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

136.    At all material times, Defendant Lutz-Bennett owed a duty of care to Plaintiff as the parent of E.M. and F.M. with legal custody rights.

137.    Defendant Lutz-Bennett's school counseling and extramural activities with Plaintiff's minor children departed from the acceptable standards of school therapy.

138.     As a school counselor, Defendant Lutz-Bennett has a duty of care to offer quality treatment services according to the prescribed professional standards.

139.     Defendant Lutz-Bennett had a duty to establish and maintain boundaries with students she counseled and their parents.

140.     Defendant Lutz-Bennett had a duty to seek consent from the Plaintiff before counseling minors E.M. and F.M.

141.     Defendant Lutz-Bennett had a duty to inform the Plaintiff of the progress of treatment of minors E.M. and F.M.

142.     Defendant Lutz-Bennett had a duty to respect the rights and responsibilities of Plaintiff as a custodial parent of E.M. and F.M. and to establish a collaborative relationship to facilitate and advocate for his children's maximum growth in the areas of academic, career and social/emotional development.

143.     Defendant Lutz-Bennett had a duty to adhere to federal, state and local laws, district policy, and ethical practice when assisting parents/guardians experiencing family difficulties interfering with their student's welfare.

144.     Defendant Lutz-Bennett had a duty to respect the privacy of the Plaintiff in accordance with the  best interests of E.M. and F.M.

145.     Defendant Lutz-Bennett had a duty to follow the directions and stipulations of the legal documentation in Plaintiff's custody case.

146.     Defendant Lutz-Bennett had a duty to adhere to clear boundaries and a position of neutrality when working with Plaintiff and/or Former Spouse.

147.    Defendant Lutz-Bennett had a duty to provide Plaintiff with accurate, comprehensive and relevant information that affect his children's safety and welfare in a timely and efficient manner.

148.    Defendant Lutz-Bennett breached clinical, ethical, and legal boundaries and standards of care as described throughout this Complaint, including, *inter alia*:

a.  Engaging in a personal relationship with Former Spouse;

b.  Failing to inform Plaintiff that she was counseling his children;

c.  Failing to obtain consent from Plaintiff to counsel his children;

d.  Failing to follow the directions of the custody orders providing Plaintiff with legal custody of his children;

e.  Failing to provide Plaintiff with any information regarding the counseling of his children and concerns that affect the safety and welfare of his children;

f.  Concealing information from Plaintiff regarding the counseling of his children;

g.  Violating Plaintiff's constitutional rights and substantive due process;

h.  Failing to include and collaborate with Plaintiff in the provision of school counseling services to his children;

i.  Failing to recognize and respect Plaintiff's custodial rights and responsibilities for his children's welfare by counseling his children without his knowledge and consent; and

j.  Failing to maintain boundaries with E.M. and F.M. by counseling them outside of school and after her employment ended.

149.    By her actions and omissions, Defendant Lutz-Bennett failed to respect the rights and responsibilities of Plaintiff as a custodial parent, violated state and federal laws by ignoring custody orders and failing to obtain consent from Plaintiff, violated Plaintiff's privacy by communicating with other therapists regarding his children and family life without his consent,

and acted with clear bias against Plaintiff and in favor of Former Spouse in the counseling services provided to E.M. and FM.

150.    Defendant Lutz-Bennett breached her duty to the Plaintiff by failing to establish a collaborative relationship with Plaintiff to facilitate and advocate for E.M.'s and F.M.'s maximum growth in the areas of academic, career, and social/emotional development.

151.    Defendant Lutz-Bennett breached her duty to the Plaintiff by failing to inform him of the school counseling program's mission and standards in academic, career, and social/emotional domains that promote and enhance the learning process and outcomes.

152.    Defendant Lutz-Bennett failed to adhere to federal, state and local laws, district policy, and ethical practice when assisting parents experiencing family difficulties by interfering with their children's welfare.

153.    Defendant Lutz-Bennett failed to inform the Plaintiff of the confidential nature of the school counseling relationship between the school counselor and student while recognizing parents have inherent legal rights to student information.

154.    Defendant Lutz-Bennett breached her duty by failing to respect the privacy of the Plaintiff in accordance with the best interests of E.M. and F.M.

155.    Defendant Lutz-Bennett breached her duty to the Plaintiff by failing to follow the directions and stipulations of the legal documentation in divorce, separation or custody cases, maintaining focus on the student.

156.    Defendant Lutz-Bennett breached her duty to the Plaintiff by failing to adhere to clear boundaries and a position of neutrality when working with parents.

157.    As a result of Defendant Lutz-Bennett's acts and/or omissions, Plaintiff has been forced to expend attorney's fees to defend his custodial rights and reputation, the quality of his

relationship with his children has been substantially harmed, and he has suffered significant damages as described throughout this Complaint.

158.     Defendant Lutz-Bennett's acts and/or omissions mentioned herein were the direct and proximate cause of the damages and injuries to Plaintiff alleged herein.

159.     Defendant Lutz-Bennett is liable for all the damages and injuries to Plaintiff proximately caused by the violation of his parental and custodial rights and the breaches of the standard of care owed to Plaintiff by virtue of counseling his children.

**COUNT VIII**
**Civil Conspiracy**
**<u>Plaintiff v. Defendant Lutz-Bennett</u>**

160.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

161.     To prove a civil conspiracy under Pennsylvania law, a plaintiff must show the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Proof of malice or an intent to injure is essential to the proof of a conspiracy. *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa.Super.Ct.1997); see also *Skipworth v. Lead Indus. Ass'n, Inc.,* 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997).

162.     Defendant Lutz-Bennett and Former Spouse acted with a common purpose to do the unlawful and outrageous  act of undermining the integrity of the court and improperly influencing the outcome of custody proceedings in favor of Former Spouse in all the ways described throughout this Complaint.

163.    Several overt acts were committed in pursuance of this common purpose, including but not limited to developing false allegations of child abuse, neglect, and/or endangerment and coaching the testimony and interview responses of E.M. and F.M. to fit those allegations.

164.    Through her role as a school counselor and without Plaintiff's knowledge and consent, Defendant Lutz-Bennett began counseling E.M. and F.M. under false pretenses as her real purpose was to coach E.M. and F.M. to malign their father's reputation and develop a record to allow Former Spouse to obtain full legal and physical custody and avoid having to pay alimony to Plaintiff.

165.    Defendant Lutz-Bennett and Former Spouse carried on the conspiracy for over 3 years, including after her employment at Skippack Elementary was terminated, until a court-ordered child custody evaluation revealed the conspiracy.

166.    Plaintiff has suffered actual legal damages as described throughout this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Anthony Maffei, respectfully requests that the Court:

A.    Assert jurisdiction over this action;

B.    Award prospective injunctive relief, compensatory and punitive damages;

C.    Enjoining Defendants and anyone acting through, with, or on behalf of them, from requiring his children to submit to any analysis, examination, or evaluation without Plaintiff's express written authorization;

D.    Declaring Defendants' acts unconstitutional;

E.    Award to Plaintiffs the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 23(h); and

28

F.      Grant such other further and equitable relief as the Court deems just, necessary, and proper to protect Plaintiff from further harm.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: October 30, 2024

Respectfully submitted,

**De GISI LAW GROUP, LLC**

Carmen A. De Gisi, Esquire (No. 208989)
Luke T. Pepper, Esquire (No. 87100)
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
Tel: (610) 897-8721
Fax: (610) 897-8862
cd@degisilaw.com
ltpepperlaw@gmail.com
*Attorneys for Plaintiff, Anthony Maffei*

29

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff and his minor children, to Plaintiff's potential claims and his claims to damages, to any defenses to same, including but not limited to, electronic data storage, student records, counseling records, counseling referrals, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, call logs, disciplinary records, video surveillance, photographs, notes, logbooks, journals, diaries, messaging app messages, voicemails, memos, records, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **VERIFICATION**

The undersigned hereby states that the statements of fact made in the foregoing document are true and correct to the best of my information and belief. The language of the document was prepared on the advice of my attorney and any legal claims or legal defenses asserted in the document are pleaded on the advice of my attorney. If the document contains averments which are inconsistent in fact, then I have been unable after reasonable investigation to ascertain which of the inconsistent averments are true, but to the best of my information and belief, one of them is true. I understand that false statements made herein are subject to the penalties of 28 U.S.C. §1746 relating to unsworn falsification to authorities.

Dated: 10-30-24

ANTHONY MAFFEI