IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANTHONY MAFFEI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PERKIOMEN VALLEY SCHOOL | : | |
| DISTRICT, ET AL. | : | NO.  24-5824 |

## MEMORANDUM

**Padova, J.**                                                    **August 27, 2025**

Plaintiff Anthony Maffei asserts claims pursuant to 42 U.S.C. § 1983 and Pennsylvania law, arising out of allegations that Defendants Perkiomen Valley School District (the "District") and school counselor Mercedi Lutz-Bennett interfered with his parental rights by counseling his minor children without his consent.  Both the District and Lutz-Bennett have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  We held oral argument on the Motions on July 9, 2025.  For the reasons that follow, we now grant Lutz-Bennet's Motion in part and deny it in part, and we grant the District's Motion in full.

## I.    BACKGROUND

The Amended Complaint (the "Complaint") alleges the following facts.  Plaintiff is the father of two minor children, E.M. and F.M.  (Compl. ¶ 9.)  At all relevant times, E.M. and F.M. were students at Skippack Elementary School, which is operated by the District.  (Id. ¶ 10.)  In July of 2019, Plaintiff initiated divorce proceeding against his now-ex-wife ("Mom").  (Id. ¶¶ 9, 29.)  During the pendency of those proceedings, and after the divorce was final, Plaintiff and Mom shared legal custody of the children, with Mom having primary physical custody.  (Id. ¶¶ 24, 31.)  Plaintiff and Mom kept the school informed about the divorce and custody arrangements.  (Id. ¶¶ 21-23.)

During the 2019 to 2020 school year, E.M. was in first grade.  (Id. ¶ 34.)  Mom struck up a personal relationship with Lutz-Bennett, who worked as a counselor at the school.  (Id. ¶¶ 26, 28.)  Mom told Lutz-Bennett that Plaintiff was challenging the physical custody arrangement and was attempting to get 50/50 physical custody.  (Id. ¶ 32.)  Lutz-Bennett began counseling E.M. during school hours without Plaintiff's knowledge or consent, and she prepared E.M. to falsely testify in favor of Mom in custody proceedings.  (Id. ¶¶ 34, 36.)  In August of 2020, the court rejected Plaintiff's request for 50-50 physical custody.  (Id. ¶ 37.)

F.M. began attending Skippack Elementary as a kindergartener during the 2020-2021 school year.  (Id. ¶ 38.)  As she had with E.M., Lutz-Bennett began secretly counseling F.M. during school hours without Plaintiff's consent.  (Id.)  Until at least October of 2022, Lutz-Bennett counseled both children during school hours, by telephone when they were with Mom, and in person during visits to Mom's house.  (Id. ¶ 40.)  She provided the children with mental health therapy and acted as a therapy coordinator with their other therapists, which included exchanging confidential patient information.  (Id. ¶¶ 35, 39.)  Lutz-Bennett specifically referred the children to Brightside Counseling to receive counseling services from Alphonso Nathan, LPC, who Lutz-Bennett knew would be sympathetic to Mom's desire to limit or terminate Plaintiff's physical custody.  (Id. ¶¶ 41-42.)  She also referred Mom and the children to an "SAP liaison" and a licensed professional counselor for additional individual and family counseling.  (Id. ¶¶ 44-45.)  Neither Defendant ever obtained Plaintiff's consent to refer the children to outside counseling.  (Id. ¶ 46.)

In August of 2022, Plaintiff and school Principal Leslie Nassoiy had an email exchange.  (Id. ¶¶ 21, 62.)  Plaintiff asked the Principal, among other things, if the school provided school-based counseling, explaining that E.M. had mentioned to him that Lutz-Bennett had been at Mom's home a couple of times that summer and as recently as the week before.  (Id. ¶ 62d.)  Nassoiy

responded that Lutz-Bennett had resigned at the end of the 2021-2022 school year, and she had not had any contact with Lutz-Bennett since.  (Id. ¶ 62e.)  Nassoiy did not reveal in her exchange with Plaintiff that Lutz-Bennett had been counseling the children before her resignation.   (Id. ¶ 62g.)  Meanwhile, when Plaintiff asked his children about the visits, the children told him that "Lutz-Bennett came to the house to visit with their mother."  (Id. ¶ 64.)

On October 31, 2022, Constance Mesiarik, Ph.D., J.D. completed a court-ordered custody evaluation and submitted it to Plaintiff's counsel.  (Id. ¶ 47.)  Plaintiff first learned from that evaluation that Lutz-Bennett had been counseling the children for three years.  (Id. ¶ 48.)  The evaluation revealed, inter alia, that Lutz-Bennett had been meeting with E.M. daily; E.M. kept a journal in Lutz-Bennett's office; Lutz-Bennett counseled E.M. regarding the custody dispute and E.M.'s testimony; and Lutz-Bennett communicated with Mom by text about E.M.  (Id. ¶ 49.)  Plaintiff asked E.M. about this information, and E.M. told him that Lutz-Bennett had advised her never to discuss the counseling sessions or the preparation of E.M.'s testimony for the custody proceedings.  (Id. ¶ 68.)

Upon receiving the custody evaluation, Plaintiff contacted Dr. Barbara Russell, the superintendent of the District, to complain and insist that, going forward, he be contacted before any school official met with either child.  (Id. ¶ 50.)  On December 3, 2022, Russell responded that she had spoken with the school principal, would learn more about the situation, and would follow up with Plaintiff the following week.  (Id. ¶ 52.)

On December 12, 2022, having received no further communication, Plaintiff wrote to Russell, reiterating his request for more information about the dates and times that Lutz-Bennett had met with the children; what was discussed at the sessions; E.M.'s journal;  and any home visits that Lutz-Bennett had made to Mom's home.  (Id. ¶ 53.)  Russell provided a 27-page document

(the "Counselor File") but denied any knowledge of E.M.'s journal that was kept in Lutz-Bennett's office. (Id. ¶ 54.) The Counselor File inexplicably contained no information prior to February of 2021, and made clear that there were multiple emails between Lutz-Bennett and Mom that were not included. (Id. ¶ 55.) Also missing was an email from Plaintiff to Lutz-Bennett on March 22, 2022, in which Plaintiff asked about school counseling and an SAP referral for the children, and an email response from Lutz-Bennett in which she did not disclose that she was already counseling the children and had already provided an SAP referral to Mom, and stated only that she recommended that the children continue to see Mr. Nathan. (Id. ¶¶ 59-60.) Plaintiff was shocked to learn from the file that there had been a systematic campaign involving Lutz-Bennett and staff at the school "to interfere with custody rights and to influence the outcome of the custody proceedings in favor of [Mom] by coaching his children's testimony and child custody interviews." (Id. ¶ 56.) Among other information, the file disclosed that Mom worked with Lutz-Bennett to coach the children to testify that Plaintiff was physically violent and threatening to the children. (Id. ¶ 58l.)

In addition to influencing the custody proceedings, Lutz-Bennett's counseling sessions with the children caused strain in Plaintiff's relationships with them. (Id. ¶ 74.) E.M., especially, became very distant and uncharacteristically sensitive, would not discuss anything related to school, and seemed to be afraid of Plaintiff. (Id.)

The Complaint contains seven Counts. Court I asserts a § 1983 claim against the District and Lutz-Bennett for violation of Plaintiff's substantive due process rights as a parent under the Fifth and Fourteenth Amendments. Count II asserts a state law claim against both Defendants for violation of Plaintiff's common law right of parental consent. Count III asserts a claim against both Defendants under the Minors' Consent to Medical Care Act, 35 Pa. Stat. § 10101 et seq, based

on Defendants' failure to obtain consent from Plaintiff for the school-based counseling. The remaining Counts assert state law claims against Lutz-Bennett alone for intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), negligence (Count VI), and civil conspiracy (Count VII).

Presently before the Court are two Motions to Dismiss, one from the District and one from Lutz-Bennett. Both Defendants seek dismissal of all of the claims against them. Plaintiff opposes both Motions.

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). We "accept as true all plausible factual allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Williams v. BASF Catalysts LLC, 765 F.3d 306, 323 (3d Cir. 2014)). However, we "need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege

"'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III.    DISCUSSION

Defendants make a variety of arguments in their Motions to Dismiss.  First, they both assert that all of the claims, as framed in the Complaint, are barred by the applicable two-year statutes of limitations.  Second, the District argues that the § 1983 claim against it should be dismissed for failure to state a municipal liability claim upon which relief can be granted under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978).  Third, both Defendants argue that the Complaint fails to allege facts sufficient to support claims against them under either the common law right of parental consent or the Minors' Consent to Medical Care Act.  Fourth, Lutz-Bennett argues that the Pennsylvania Political Subdivision Tort Claims Act provides her with immunity from the negligence-based claims.  Fifth, Lutz-Bennett argues that the Complaint fails to allege facts sufficient to support Plaintiff's intentional infliction of emotional distress and civil conspiracy claims.  And, finally, both Defendants argue that Plaintiff has not established a legal basis for the prospective injunctive or declaratory relief that he requests.  We address each argument in turn.

### A.  Statute of Limitations

Both Defendants argue that the claims against them are subject to dismissal on statute of limitation grounds.  "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."  Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017) (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)).

### 1.  42 U.S.C. § 1983

Claims that assert violations of 42 U.S.C. § 1983 are governed by the statute of limitations for personal injury claims of the state where the constitutional violation occurred. Wilson v. Garcia, 471 U.S. 261, 276 (1985), superseded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004); O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006) (citation omitted).  Here, the alleged constitutional violations occurred in Pennsylvania, which provides for a two-year statute of limitations for personal injury claims.  See 42 Pa. Cons. Stat. Ann. § 5524.  The accrual date for a § 1983 claim is governed by federal law, which provides that the limitations period begins to run "when the plaintiff knew or should have known of the injury upon which [his] action is based."  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (quotation omitted).

At the same time, there are certain circumstances when, after the claim accrues, the statutory of limitations is tolled.  "The tolling of a statute of limitations on a § 1983 claim is a matter of state law as long as there is no conflict with federal law or policy."  Onuffer v. Walker, Civ. A. No. 13-4208, 2014 WL 3408563, at *4 (E.D. Pa. July 14, 2014) (citing Kach, 589 F.3d at 639; Leonard v. City of Pittsburgh, Civ. A. No. 13-455, 2013 WL 4541727, *3 (E.D. Pa. Aug. 27, 2013)).  In Pennsylvania, "where the complaining party is reasonably unaware that his or her injury

has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations." <u>DiDomizio v. Jefferson Pulmonary Assocs.</u>, 280 A.3d 1039, 1046 (Pa. Super. Ct. 2022) (quoting <u>Mariner Chestnut Partners, L.P. v. Lenfest</u>, 152 A.3d 265, 283 (Pa. Super. Ct. 2016)). "To successfully invoke the discovery rule, a party must show the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." <u>Id.</u> (quoting <u>Mariner Chestnut Partners</u>, 152 A.3d at 283). In other words, the discovery rule "t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct." <u>Rice v. Diocese of Altoona-Johnstown</u>, 255 A.3d 237, 247 (Pa. 2021) (alteration in original) (quoting <u>Wilson v. El-Daief</u>, 964 A.2d 354, 364 (Pa. 2009)). "A party fails to exercise reasonable diligence when it fails to make an inquiry when the information regarding the injury becomes available." <u>DiDomizio</u>, 280 A.3d at 1046 (quoting <u>Mariner Chestnut Partners</u>, 152 A.3d at 283). "[T]he point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors." <u>Id.</u> (quoting <u>Wilson</u>, 964 A.2d at 365).

In this case, Plaintiff's § 1983 claim is grounded on allegations that Defendants violated his constitutional right to make child-rearing decisions by counseling his children without first seeking and obtaining his consent. Both Defendants argue that the two-year statute of limitation expired more than two years before Plaintiff commenced this case on October 30, 2024, because he knew or should have known of the counseling and/or his injuries from the counseling prior to October 30, 2022. In responding to Defendants' arguments, Plaintiff points to his allegation that he "learned for the first time from reading the [October 31, 2022] Custody Evaluation that his children had been counseled by Defendant Lutz-Bennett for the past three years without his

knowledge or consent." (Compl. ¶¶ 47-48.)  The Complaint also alleges that, prior to this, "Plaintiff had no reason to believe that Defendant Lutz-Bennett had been counseling his children or that the visits were anything other than social visits to see his ex-wife." (Id. ¶ 63.)  Thus, Plaintiff maintains that the statute of limitations did not begin to run until he received the October 31, 2022 custody evaluation.

### a. The District's Argument

The District argues that the § 1983 claim is time-barred because Plaintiff knew or should have known about Lutz-Bennett's counseling in August of 2022, when he alleges that he emailed Principal Nassoiy about Lutz-Bennett.  The District therefore maintains that the statute of limitation began to run in August of 2022 and expired before Plaintiff filed suit in October of 2024.

Reading the allegations of the Complaint in the light most favorable to Plaintiff, we must credit Plaintiff's allegation that he did not learn of the counseling until he received the custody evaluation in October of 2022.  (Id.)  While the District essentially argues that Plaintiff actually knew—or at least should have known—of the counseling in August, this is not based on a fair reading of the allegations regarding Plaintiff's correspondence with Nassoiy.  As noted above, the Complaint alleges that, after learning from E.M. in August of 2022 that Lutz-Bennett had been at Mom's home, Plaintiff reached out to Principal Nassoiy to inquire whether the school offered school-based counseling.  (Id. ¶ 62d.)  Nassoiy said only that Lutz-Bennett no longer worked for the school, without revealing that she had been counseling the children prior to her resignation, and then provided Plaintiff with the new counselor's contact information.  (Id. ¶ 62e-g.)   In addition, the Complaint alleges that Plaintiff's children told him that Lutz-Bennett came to Mom's house to visit with Mom.  (Id. ¶ 64.)  These allegations, read in the light most favorable to Plaintiff, allow for a reasonable inference that Plaintiff reasonably investigated the arguably innocuous fact

that Lutz-Bennet had been at Mom's home.  We therefore reject the District's argument, at this early stage of the proceedings, that the § 1983 claim against it is barred by the statute of limitations.

### b. Lutz-Bennett's Argument

Lutz-Bennett approaches the statute of limitation issue from a different vantage point. Rather than focusing on when Plaintiff learned of the counseling, she argues that Plaintiff's claim accrued, and the statute began to run, when Plaintiff knew that he had been injured.  This, she contends, was either (1) in August of 2020, when Plaintiff failed to obtain the 50-50 physical custody order that he desired, or (2) around the same time, when he recognized that E.M. had become more distant.  She therefore maintains that the statute of limitations expired two years later, either in August of 2022 or shortly thereafter.  Lutz-Bennett further argues that the discovery rule is not available to toll the statute because Plaintiff did not exercise reasonable diligence in investigating the cause of his injuries.  She reasons that once Plaintiff knew of his injuries, a reasonable investigation would have included a request for his children's counseling files, a request that Plaintiff ultimately lodged in December of 2022.  She maintains that, had Plaintiff requested the files upon recognizing his injuries, he would have immediately learned that she had been counseling the children and known that he had a potential claim against her.

We will accept for purposes of Lutz-Bennett's argument only that Plaintiff's claim accrued when he knew of the injuries that she cites.  However, her argument regarding the discovery rule appears to be based on a fundamental misunderstanding of the rule, which allows for tolling when a plaintiff is "reasonably unaware that [he has suffered an] injury [that] has been caused by another party's conduct." DiDomizio, 280 A.3d at 1046 (quotation omitted).  Here, the allegations of the Complaint allow for the inference that Plaintiff remained reasonably unaware that he had suffered an injury that was caused by another party's conduct after he lost his custody challenge and

experienced a strained relationship with his children. Indeed, neither of these alleged injuries are a type that, absent additional information, would alert a parent that another party—and specifically, a school or school counselor—was at fault. Thus, while Lutz-Bennett argues that Plaintiff should have requested the counselor file long before he did, she has failed to develop a convincing argument that Plaintiff knew or should have known that his alleged injuries had been caused by another person prior to his receipt of the custody evaluation in October of 2022.[1] We therefore reject Lutz-Bennett's arguments that the Complaint does not allow for a reasonable inference that the discovery rule tolled Plaintiff's claims until he received the October 31, 2022 custody evaluation from the court.

In sum, reading the light in the most favorable to the Plaintiff and assuming *arguendo* that Plaintiff's injuries from the alleged misconduct were apparent in August of 2020, we conclude that the Complaint allows for a reasonable inference that the discovery rule tolled the running of the statute of limitations until October 31, 2022, when Plaintiff allegedly first learned of Lutz-Bennett's counseling. See Brown v. Buck, 614 F. App'x 590, 593 (3d Cir. 2015) (citation omitted)

---

[1] We specifically reject Lutz-Bennett's argument that this case is analytically indistinguishable from Rice, in which the plaintiff, who had been sexually abused by a priest, waited thirty-five years before commencing suit against the priest and Diocese. 255 A.3d at 240. The plaintiff in Rice argued that the discovery rule saved her claims against the Diocese from any time-bar because she did not know, and could not have known, of the Diocese's involvement in covering up the priest's abuse until shortly before she filed suit. Id. at 245. The Pennsylvania Supreme Court rejected this argument, concluding that the plaintiff had known of her abuse and that it had been caused by a third party (the priest) at the time the abuse occurred, and that she therefore had an obligation at that time to investigate the involvement of any other third parties. Id. at 251 (stating that "where there was an actual known cause of a significant harm," the plaintiff was on "inquiry notice regarding other potentially liable actors," and had an obligation to investigate other causes during the statutory period). That situation is factually distinguishable from the instant case, where the Complaint allows for a reasonable inference that Plaintiff had no reason to suspect, much less know, that there was any third party who could be liable for his alleged injuries at the time those injuries occurred. Accordingly, we find the situation in this case to be distinguishable from that in Rice.

("The discovery rule applies in cases where the injured party is unable to know that he is injured <u>and</u> to know what caused the injury, despite the exercise of reasonable diligence." (emphasis added) (citation omitted)).  We therefore reject Lutz-Bennett's argument, at this early stage of the proceedings, that the Complaint demonstrates on its face that the § 1983 claim against her is barred by the statute of limitations.  Moreover, because Lutz-Bennet does not make any alternative argument on the merits for dismissal of the § 1983 claim against her, we deny her Motion insofar as it seeks dismissal of the § 1983 claim, and that claim against her will proceed.

### 2. State Law Claims

Defendants also argue that the state law claims against them are barred by two-year statutes of limitations.  Specifically, they assert that the claims pursuant to the common law of parental consent and Minors' Consent to Medical Care Act are analogous to battery claims, which are subject to a two-year statute of limitations.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 5524(1); <u>Parents United for Better Schs., Inc. v. Sch. Dist. of Phila. Bd. of Educ.</u>, 978 F. Supp. 197, 206 (E.D. Pa. 1997) ("<u>Parents United II</u>") (equating the scope of the common law parental consent doctrine to the informed consent doctrine and stating that "[f]ailure to obtain . . . consent renders the subsequent operation a battery" (citation omitted)).  The tort claims in Counts IV-VII are likewise subject to a two-year statutory period.  42 Pa. Cons. Stat. Ann. § 5524(7) (two-year statute for actions sounding in tort); <u>see</u> <u>Mills v. City of Phila.</u>, Civ. A. No. 14-593, 2023 WL 6520488, at *10 (E.D. Pa. Oct. 5, 2023) (citations omitted) (applying two-year statute to claims for civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress).

In arguing that these claims are time-barred, Defendants employ the same analyses and make the same argument that we rejected in connection with the § 1983 claim.  We therefore reject

these timeliness arguments for the same reasons, and we deny the Motions insofar as they seek dismissal of the state law claims on statute of limitation grounds.

**B.  <u>Monell</u> Liability**

The District alternatively argues that, if the <u>Monell</u> claim against it is not time-barred, the claim should nevertheless be dismissed because it fails to state a claim upon which relief can be granted.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws."  <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006).  To state a § 1983 claim, the plaintiff must allege that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States."  <u>Id.</u> (citing <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999); <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Where the defendant to a § 1983 claim is a municipality, <u>Monell</u> provides that it cannot be vicariously liable for the constitutional violations of its employees simply because it employed them.  <u>Monell</u>, 436 U.S. at 691.  Rather, the municipality can only be liable for violations *it* causes, either by official policy, persistent and widespread custom, or a "failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'"  <u>Forrest v. Parry</u>, 930 F.3d 93, 105 (3d Cir. 2019) (citing <u>Est. of Roman v. City of Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019)); <u>see also</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 60-61 (2011) (citations omitted).

Here, Plaintiff contends that his Fifth and Fourteenth Amendment rights as a parent were violated when Defendants failed to obtain his consent before Lutz-Bennett secretly counseled the children to testify against him at a custody hearing.  In the <u>Monell</u> claim against the District, the Complaint alleges that these constitutional violations were caused either by (1) the District's adoption of policies and/or customs that favor mothers over fathers when the parents share legal

custody, or (2) the District's failure to implement policies or train its employees regarding shared legal custody and parental consent.[2]

### 1. Custom or Policy of Violating Rights of Fathers

A municipality can be liable under § 1983 for constitutional injuries caused by official municipal policy or custom. Connick, 563 U.S. at 60-61 (quoting Monell, 436 U.S. at 691)(citations omitted). In order to allege a plausible Monell claim on this basis, a plaintiff must allege either (1) a policy, which is defined as "an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subjects" or (2) a custom, which is "course of conduct so well-settled and permanent as to virtually constitute law." Forrest, 930 F.3d at 105-06 (citing Est. of Roman, 914 F.3d at 798).

Here, the Complaint alleges that the District had a policy and/or custom of violating the rights of fathers with shared legal custody by providing preferential treatment to mothers, failing to include fathers in decisions regarding counseling of their children, and assisting mothers in contested custody proceedings. Plaintiff argues that he has alleged sufficient facts "'to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

---

[2] Specifically, the Complaint alleges that the District maintained policies or customs (1) "that its employees should assume that a separated or divorced mother of a student has sole legal custody," (2) "to provide preferential treatment to mothers with shared legal custody over fathers with shared legal custody," (3) "of favoring mothers with shared legal custody over fathers with shared legal custody by failing to contact such fathers and obtain parental consent when the mothers have consented to school counseling," and (4) "assisting mothers in their custody proceedings to the detriment of the legal and custodial rights of the fathers." (Compl. ¶¶ 94-98.) It further alleges that the District "has not adopted or implemented any policies or procedures" or "provided training to its employees" concerning (1) "obtaining parental consent before providing school counseling to minor students," (2) "notifying parents with shared legal custody when minor students are provided with counseling and/or school-based therapy by its school counselors," (3) "the rights of parents with shared legal custody," and (4) "minor students whose parents are separated or divorced and both parents share legal custody." (Id. ¶¶ 90-93.)

However, the Complaint simply does not identify any "official proclamation, policy, or edict" that the District has adopted, much less one that favors mothers over fathers.[3] Est. of Roman, 914 F.3d at 798 (quotation omitted). Moreover, contrary to Plaintiff's assertion, the factual allegations of the Complaint only support a reasonable inference that Plaintiff was treated less favorably than Mom, not that there was any official District policy to disfavor all fathers.

Similarly, while the Complaint baldly alleges that the District has various customs that disfavor fathers, it alleges no facts that could give rise to a reasonable inference that conduct disfavoring fathers is common, much less "well-settled and permanent." Forrest, 930 F.3d at 106

---

[3] It is worth noting that the District asserts in its Motion to Dismiss that it has an officially adopted and publicly available policy that addresses the rights of separated and divorced parents, which, on its face, does not favor mothers over fathers. That policy, District Policy 238, Parent of Record, which was adopted in 1995 and last revised on March 10, 2025, and which is available on the District's website, states as follows:

> As used herein, and except in the case of separated parents with equally shared physical custody, the **parent of record** is defined as that person with whom the child resides and who is identified in the school records as being responsible for school purposes. Where the parents of the child are both living with the child or, where separated, the physical custody of the child is equally shared between the parents, both parents shall be deemed Parents of Record.
> Although other parents/guardians who are not deemed Parents of Record may have input in such decisions, the parent of record shall have final responsibility for all educational and medical decisions required by the district.
> \*     \*     \*
> Where there is a joint custody, or shared custody, both parents may be equally involved in the educational process. Principals should make reasonable efforts to involve all parties in the education of the child, however, the parent of record shall have the final say in decisions affecting the child, unless state law or order of the court indicates otherwise.

https://go.boarddocs.com/pa/perkiomen/Board.nsf/goto?open&id=DCQNTE616DA2, archived at https://perma.cc/NS3B-7KYY

Plaintiff's failure to acknowledge this gender-neutral policy in the Complaint when alleging that District policies favor mothers over fathers raises a legitimate question concerning the extent to which he and his counsel adequately investigated the facts underlying their clams before filing the Complaint. However, we need not consider any such investigative shortcomings further because we dismiss Plaintiff's Monell claim grounded on policy and/or custom for failure to allege either an official proclamation, policy, or edict, or a well-settled and permanent custom, that disfavors fathers as alleged.

(citation omitted).  Rather, again, the only factual allegations are that Plaintiff himself received inequitable treatment vis-à-vis Mom.  In the absence of any allegations of fact suggesting that the District regularly, i.e., customarily, treated fathers more poorly than mothers in situations in which the parents are separated or divorced, or share joint custody, the Complaint simply does not support a reasonable inference that the District has engaged in a well-settled and permanent course of conduct that disfavored fathers as a class.  See Brown v. City of Pittsburgh, 586 F.3d 263, 292 (3d Cir. 2009) ("[A] single incident of police misbehavior by a single policeman is insufficient as *sole* support for an inference that a municipal policy or custom caused the incident." (alteration in original) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 832 (1985) (Brennan, J., concurring)) (additional citations omitted)); Id. (requiring plaintiff seeking to impose Monell liability based on municipality's purported favoritism to "demonstrate a pattern of unlawful favoritism" (quotation omitted)).

For these reasons, the Complaint does not allege a cognizable Monell claim grounded on either policy or custom. We therefore grant the District's Motion insofar as it seeks dismissal of that aspect of Plaintiff's Monell claim.

## 2.  Failure to Train/Inadequacy of Policies

Plaintiff's Monell claim is alternatively grounded on allegations that the District failed to train its employees, and failed to adopt and implement policies, concerning the right of separated and/or divorced parents with shared legal custody to be consulted regarding the provision of school counseling.[4]  (See Compl. ¶¶ 90-93.)  The District moves to dismiss this claim, arguing, inter alia,

---

[4] The District argues that Plaintiff's failure or inadequacy claim is inherently inconsistent with his policy or custom claim because the failure or inadequacy claim alleges that the District did not adopt any policies addressing Plaintiff's rights to be consulted about counseling, whereas the policy or custom claim alleges that the District did adopt policies that violated Plaintiff's right to be consulted about the same counseling.  However, we need not address this alleged

that the Complaint fails to allege any facts to support an inference that the District was deliberately indifferent to constitutional violations resulting, or likely to result, from any such failures or inadequacies.

A plaintiff may assert a <u>Monell</u> claim based on allegations that a municipal defendant caused constitutional injuries by failing to take action, or by taking inadequate action, so long as the failures or inadequacies were the result of the defendant's deliberate indifference to the constitutional rights of those affected. <u>Forrest</u>, 930 F.3d at 105-06. Such claims are commonly based on a municipality's failure to train, supervise, or discipline, but can be based on any alleged municipal inaction that is deliberately indifferent to resulting violations of constitutional rights. <u>See id.</u> at 105. Such deliberate indifference typically requires a showing that the potential for constitutional violations was known or obvious, such that the municipality's failure to act effectively constitutes a decision to violate the Constitution. <u>Connick</u>, 563 U.S. at 61-62 (quotations and citations omitted). Ultimately, to allege a cognizable claim based on failure or inadequacy amounting to deliberate indifference, a plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." <u>Forrest</u>, 930 F.3d at 106 (citing <u>Carter v. City of Phila.</u>, 181 F.3d 339, 357 (3d Cir. 1999)).

To show deliberate indifference, it is "ordinarily necessary" to show a pattern of prior similar constitutional violations—"a history of employees mishandling." <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 409 (1997); <u>Forrest</u>, 930 F.3d at 106 (citation omitted);

---

inconsistency because Plaintiff has failed to allege facts that state a plausible claim under either theory.

see also Onyiah v. City of Phila., 660 F. Supp. 3d 407, 417 (E.D. Pa. 2023) ("Generally, Plaintiffs can plead . . . deliberate indifference by alleging that decision-makers knew that similar constitutional deprivations had previously occurred and were aware of ways to prevent them[.]"). This is because such a pattern can support an inference that the municipality consciously disregarded a known peril to constitutional rights.  Bryan Cnty., 520 U.S. at 407.  In "a narrow range of circumstances," however, a plaintiff can establish deliberate indifference without a pattern of prior constitutional violations by demonstrating that the municipality inadequately equipped its employees for a recurring scenario in which there was an "obvious potential" for such violations— a "difficult choice."  Id. at 409; Forrest, 930 F.3d at 106 (citation omitted).  This latter method places a high burden on the plaintiff because it risks holding the municipality liable without fault. Berg, 219 F.3d at 276; see also Bryan Cnty., 520 U.S. at 408 ("Where a claim of municipal liability rests on a single decision . . . the danger that a municipality will be held liable without fault is high.").

As he did with respect to the Monell claim grounded on policy or custom, Plaintiff argues that he has alleged sufficient facts "'to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of a Monell claim grounded on failure or inadequacy. Phillips, 513 F.3d at 234 (quoting Twombly, 550 U.S. at 556).  However, the Complaint alleges only that Defendants violated Plaintiff's constitutional right to participate in decision-making regarding his children's school-based counseling and that the District's "acts and omissions [in that regard] amount[ed] to deliberate indifference."  (Compl. ¶ 107.)  The Complaint does not allege any facts suggestive of a patten of prior similar constitutional violations of the rights of separated and/or divorced parents to be consulted regarding the provision of counseling (by Lutz-Bennett or other school counselors).  It also does not allege any facts giving rise to a reasonable

inference that the alleged incident was a recurring scenario posing an clear risk to such rights that would have alerted the District to an obvious potential for such violations.  Under these circumstances, we conclude that the Complaint fails to allege facts that support a reasonable inference that Plaintiff's alleged exclusion from decisions regarding the counseling provided to his children at school was the result of the District's deliberate indifference to constitutional rights. Cf. Round v. City of Phila., Civ. A. No. 19-3513, 2020 WL 2098089, at *10 (E.D. Pa. May 1, 2020) (dismissing municipal liability claim based on "conclusory allegations" that municipality was deliberately indifferent to "systemic abuses"); Burke v. Barr, Civ. A. No. 22-3464, 2024 WL 750572, at *9 (E.D. Pa. Feb. 23, 2024) (finding conclusory allegations that municipality was deliberately indifferent to environment of excessive force "woefully insufficient" (citing Wood v. Williams, 568 F. App'x 100, 104 (3d Cir. 2014))).

In the absence of allegations that could support a reasonable inference that the District was deliberately indifferent to the rights of separated or divorced parents to be consulted regarding the provision of school-based counseling, the Complaint fails to state a Monell failure or inadequacy claim upon which relief can be granted.  We therefore grant the District's Motion insofar as it seeks dismissal of the Monell claim based on failure or inadequacy of its training or policies.

### C.    Common Law Right of Parental Consent

In Count II of the Complaint, Plaintiff alleges that Defendants violated the common law right of parental consent by counseling his children without first obtaining his consent. Specifically, Plaintiff asserts that, under Pennsylvania common law, parental consent must be obtained before providing medical care to a minor and that school-based counseling constitutes such medical care.  Both the District and Lutz-Bennet move to dismiss these claims, arguing, inter

alia, that school counseling services do not constitute "medical care" subject to the common law right of parental consent.

Under Pennsylvania's common law right of parental consent, parental consent must be secured before medical treatment is rendered to a minor child. Parents United for Better Schs., Inc. v. Sch. Dist. of Phila. Bd. of Educ., 646 A.2d 689, 691 (Pa. Commw. Ct. 1994) ("Parents United I"). It is a "time honored" and well-settled proposition that "it is for the parent in the first instance to decide what is actually necessary for the protection and preservation of the life of his or her child." Id. (citing 59 Am. Jur. 2d Parent and Child § 48 (1987); 67A C.J.S. Parent and Child § 11 (1978)). As a result, "medical personnel can be found liable for treating a child without the consent of the parent." Id. at 691-92 (citation omitted).

The question of what constitutes "medical treatment" for purposes of this common law right was addressed in Parents United II. There, the court stated that "the scope of the common-law parental consent rule may be defined by reference to the informed consent doctrine." 978 F. Supp. at 206. Referring to that doctrine, the court concluded that common law parental consent "extends only to procedures in which physicians or their agents intend[] use of their medical expertise to physically contact the patient, either directly or by wielding medical instruments." Id. (citation omitted). Defining the scope of the common law right to parental consent in that way, the court found that the provision of condoms in a school setting did not constitute medical treatment for which consent was necessary because "[c]ondoms are non-invasive, are not used to diagnose or cure disease, and do not require medical training or supervision for their use." Id. at 207.

The Parents United II court was careful to distinguish "medical treatment," for which parental consent is necessary under common law, from the significantly broader category of

"health services." Id.  Health services, the court noted, can serve a variety of health-related functions, including, for example, preserving health and preventing infection. Id.  It emphasized, however, that "[i]mpact upon health . . . does not transform a health service into a medical treatment."  Id.  Rather, it explained, "medical treatment" under the common law is defined relatively narrowly to encompass only situations in which medical professionals use medical expertise to physically treat a patient in a scenario that includes physical contact between the professional and the patient.  See id. at 206-07.

Plaintiff argues that Defendants violated his common law right to consent by failing to obtain his consent before providing the children with school counseling.  However, as noted above, the common law right to parental consent does not apply to all health services, but rather, only to the relatively narrow class of medical services that are rendered by a medical professional and include physical contact with the minor.  Here, the Complaint does not allege that Lutz-Bennett is a medical professional, that she utilized medical expertise to counsel Plaintiff's children, or that she physically touched them in any way in rendering her services to them.[5]  Under these circumstances, the Complaint does not allege a cognizable claim for violation of the common law right of parental consent under Pennsylvania law, and we grant Defendants' Motions to Dismiss insofar as they seek dismissal of those claims

### D. Minors' Consent to Medical Care Act

In Count III of the Complaint, Plaintiff alleges that Defendants violated the Minors' Consent to Medical Care Act (the "Act" or the "Minors' Consent Act"), 35 Pa. Stat. §§ 10101-10105, by counseling his children based solely on Mom's consent, without also consulting him.

---

[5] Notably, in Pennsylvania, the Department of Education does not require school-based counselors to possess any medical expertise.  See 22 Pa. Code §§ 49.102, 49.103.

In their Motions to Dismiss, the District and Lutz-Bennett argue, inter alia, that the Complaint fails to allege a cognizable claim for violation of the Act because (1) the Act only requires the consent of one parent, not two, to a minor's mental health treatment, and (2) the Act does not even apply to the school-based counseling at issue here, because such counseling does not qualify as "mental health treatment" as that term is defined in the Act.

The primary purpose of the Minors' Consent Act is to "carve[] out" exceptions to the common law right to parental consent, setting forth "specific circumstances where express parental consent is not necessary for the administration of medical treatment." Parents United I, 646 A.2d at 692 (citations omitted). In this regard, the Act states that a minor who is at least eighteen years old, has graduated high school, has married, or has been pregnant, may give consent to medical, dental or health services for himself or herself without the consent of any other person. 35 Pa. Stat. § 10101. The Act also, however, addresses the requisite parental consent in other circumstances, including situations involving a minor's outpatient mental health treatment, which, Plaintiff maintains, includes the school-based counseling at issue here. Id. § 10101.1. Regarding mental health treatment, the Act states, in pertinent part: "A parent or legal guardian of a minor less than eighteen years of age may consent to . . . outpatient mental health treatment on behalf of the minor, and the minor's consent shall not be necessary." Id. § 10101.1(a)(1). It further states that "another parent . . . may not abrogate consent provided by a parent . . . on the minor's behalf to . . . outpatient mental health treatment." Id. § 10101.1(a)(3).

Here, Plaintiff asserts that Defendants violated the Act by failing to obtain his consent before providing counseling to his children. However, as the above discussion makes clear, only one parent must consent to mental health treatment under the Act and a second parent "may not

abrogate" that consent.[6]  Id. § 10101.1(a)(3).  Moreover, there is nothing in the Act that requires a mental health provider to seek out the consent of a second parent.  Thus, the Complaint's factual allegations that Mom arranged for counseling of E.M. and F.M., and that Plaintiff's consent was not obtained, are insufficient to allege a cognizable claim for violation of the Act.  Consequently, we dismiss Plaintiff's claim under the Minors' Consent to Medical Care Act for failure to state a claim upon which relief can be granted on this basis.[7]

### E.  Negligence Claims - Pennsylvania Political Subdivision Tort Claims Act

In Counts V and VI of the Complaint, Plaintiff asserts claims for negligence and negligent infliction of emotional distress against Lutz-Bennett alone. These claims assert that Lutz-Bennett owed various duties to Plaintiff, including the duty (1) to offer quality treatment to Plaintiff's children, (2) to establish and maintain appropriate boundaries with them, (3) to seek consent from Plaintiff before counseling his children, (4) to inform Plaintiff of the progress of her treatment of his children, (5) to respect the rights and responsibilities of Plaintiff as custodial parent, (6) to respect Plaintiff's privacy, and (7) to maintain neutrality between him and Mom.  (Compl. ¶¶ 152-61.)  They further assert that Lutz-Bennet "willfully breached" these and other duties and acted with "actual malice" with the intention of influencing the custody proceedings in favor of Mom. (Id. ¶¶ 162, 171; see also id.  ¶¶ 134, 147.)

---

[6] There is further support for the conclusion that only one parent must consent to outpatient mental health treatment in another provision of the Act, which states: "Nothing in this subsection shall prevent a nonconsenting parent who has legal custody rights of a minor child to object to the consent given by the other parent to inpatient treatment . . . ."  35 Pa. Stat. § 10101.1(a)(10) (emphasis added).  There is no such provision addressing the consent given by one parent to outpatient treatment.

[7] Because we dismiss Plaintiff's claim on this basis, we do not reach Defendants' alternative argument that the school-based counseling that was provided to Plaintiff's children does not qualify as mental health treatment subject to the Minors' Consent Act.  See 35 Pa. Stat. § 10101.1(b).

Lutz-Bennett argues that the negligence claims against her are barred by the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. §§ 8541-64, which grants her immunity from such claims. The Tort Claims Act generally exempts local agencies, including school districts, from liability for damages for any injuries caused by acts of the agency or its employees. Id. § 8541; Petula v. Mellody, 631 A.2d 762, 765 (Pa. Commw. Ct. 1993). The statute provides for a limited waiver of sovereign immunity for nine categories of negligent acts by municipal agents or employees, none of which apply in the instant case. 42 Pa. Cons. Stat. Ann. § 8542(a)-(b) (allowing for liability for negligence involving (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control of real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse). The Tort Claims Act extends immunity from liability to an agency's employees acting within the scope of their duties to the same extent as the local agency, allowing claims against such employees only for acts constituting a crime, actual fraud, actual malice or willful misconduct. Id. §§ 8545, 8550. In this context, willful misconduct "has the same meaning as the term intentional tort." Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quotation omitted); Balletta v. Spadoni, 47 A.3d 183, 196 (Pa. Commw. Ct. 2012) ("For purposes of Section 8550 of the Tort Claims Act, 'willful misconduct' . . . is synonymous with 'intentional tort.'" (quotation omitted)).

Plaintiff's response to Lutz-Bennett's argument that she is immune from suit is a single sentence. He argues that the Tort Claims Act does not bar his negligence claims because he "clearly alleges acts by Lutz-Bennett that fall within the willful misconduct exception that show actual malice toward Plaintiff." (Pl. Mem. in Opp. to Lutz-Bennett's Mot. to Dism. at 13.) However, while Plaintiff includes allegations in the negligence counts that Lutz-Bennett acted

willfully and with actual malice, the fact remains that Counts V and VI are claims for negligence and negligent infliction of emotional distress. Because these are negligence claims that are not included in the limited list of negligence claims for which immunity is waived, we dismiss the claims in Counts V and VI of the Complaint based on Lutz-Bennett's immunity.

### F.    Intentional Infliction of Emotional Distress

In Count IV of the Complaint, Plaintiff asserts a claim against Lutz-Bennett for intentional infliction of emotional distress ("IIED"). Specifically, Count IV asserts that Lutz-Bennett conspired with Mom to secretly counsel Plaintiff's children and coach them to testify unfavorably regarding Plaintiff in order to influence the custody dispute and the court's alimony award. The Complaint asserts that this constituted outrageous and intentional conduct that caused Plaintiff emotional distress. Lutz-Bennett has moved to dismiss this claim for failing to allege all of the necessary elements of an IIED claim.

To state a claim for IIED under Pennsylvania law, a complaint must plausibly allege that: (1) the defendant engaged in "extreme and outrageous" conduct, (2) the conduct was "intentional or reckless," (3) the conduct caused emotional distress, and (4) the distress was "severe." Jordan v. Pa. State Univ., 276 A.3d 751, 775 (Pa. Super. Ct. 2022) (citing Madreperla v. Williard Co., 606 F. Supp. 874, 879-80 (E.D. Pa. 1985)). "The conduct must be 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Rinehimer v. Luzerne Cnty. Cmty. Coll., 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988); Restatement (Second) of Torts § 46 cmt. d). A complaint must also allege that the plaintiff suffered physical harm as a result of the conduct. N'Jai v. Pittsburgh Bd. of Pub. Educ., 487 F. App'x 735, 737 (3d Cir. 2012) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)) (citing Reedy v. Evanson, 615 F.3d

197, 231 (3d Cir. 2010)).  Physical harm can include "physical manifestations of emotional suffering" such as "depression, nightmares, stress and anxiety," which are ongoing and require psychological treatment.  Love v. Cramer, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992); see also Ramos v. United States, Civ. A. No. 16-924, 2017 WL 2812668, at *4 (M.D. Pa. 2017) (citing Love, 606 A.2d at 1179); Weaver v. O'Connor, No. 1291 WDA 2013, 2014 WL 10936773, at *4 (Pa. Super. Ct. May 28, 2014) (citing Love, 606 A.2d 1179).

Here, Lutz-Bennett does not argue that the Complaint fails to adequately allege that she engaged in intentional or reckless and outrageous conduct.  Rather, she argues only that we should dismiss the IIED claim because the Complaint fails to allege that Plaintiff suffered physical harm as a result of her alleged conduct.

With regard to physical harm, the Complaint alleges that Plaintiff suffered emotional distress injuries, which "manifested themselves physically in the form of insomnia, anxiety, financial loss, and other physically disabling manifestations," and that he has "suffered severe emotional distress, including depression and anxiety, requiring medical care."  (Compl. ¶¶ 127-28.)  At this stage of the proceedings, under the Pennsylvania law set forth above, these allegations suffice to allege the physical harm necessary to support an IIED claim.  See Love, 606 A.2d at 1179.  We therefore deny Lutz-Bennett's Motion insofar as she seeks dismissal of the IIED claim.

### G.  Civil Conspiracy

Count VII of the Complaint asserts a claim against Lutz-Bennett for civil conspiracy. Plaintiff specifically alleges in that Count that Lutz-Bennett and Mom conspired to undermine the integrity of the court and improperly influence the outcome of custody proceedings in favor of Mom by developing false allegations of child abuse, neglect and/or endangerment, and by coaching the testimony of E.M. and F.M. to fit those allegations.   (Compl. ¶¶ 177-78.)

Lutz-Bennett argues that the civil conspiracy claim should be dismissed because a civil conspiracy under Pennsylvania law requires an underlying tort, and here, all of Plaintiff's tort claims should be dismissed.  See Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (citation omitted).  We have, however, refused to dismiss Plaintiff's IIED claim. Thus, taking Lutz-Bennett's brief argument for dismissal of the civil conspiracy claim at face value, we reject it because there is an underlying tort that we are permitting to proceed. Consequently, we deny Lutz-Bennett's Motion to Dismiss insofar as it seeks dismissal of the civil conspiracy claim.

### H.  Injunctive and Declaratory Relief

In the Complaint's prayer for relief, Plaintiff seeks, among other remedies, "prospective injunctive relief . . . against Defendant[s]" and an order "[e]njoining Defendants and anyone acting through, with, or on behalf of them, from requiring his children to submit to any counseling, analysis, examination, or evaluation without Plaintiff's express written authorization." (Compl. at 31.)  He also requests unspecified "declaratory relief."  (Id. ¶ 3.)

"The law in this Circuit is that "a plaintiff must demonstrate standing separately for each form of relief sought."  Yaw v. De. River Basin Comm'n, 49 F.4th 302, 317 (3d Cir. 2022) (quotation omitted).  To establish standing "when a plaintiff seeks *prospective* (forward-looking) relief in the form of an injunction or declaratory judgment, [the plaintiff] must show that they are likely to suffer *future* injury."  Id. at 318 (quotation and citation omitted).  Both Defendants argue that Plaintiff does not have standing to pursue his claims for injunctive and/or declaratory relief because the Complaint does not plead facts that suggest a likelihood that Plaintiff will suffer future injuries.

Because we have already dismissed the only claims in this action asserted against the District, i.e., the Monell claim and the claims for violation of the common law right to parental consent and the Minors' Consent to Medical Treatment Act, there are no claims remaining against the District for which relief would be available. We therefore dismiss the claims against the District for injunctive and declaratory relief as moot.

In contrast, we deny Lutz-Bennett's Motion to Dismiss the claim for prospective injunctive relief against her. Lutz-Bennett's only argument on this issue is that "[t]here are no allegations . . . . establishing that there is a substantial risk that the harm Plaintiff alleges will re-occur in the future." (Lutz-Bennett Mem. in Supp. of Mot. to Dism. at 15.) This minimalist argument fails to amply account for the allegations of the Complaint that Lutz-Bennett developed a close relationship with Mom, collaborated with Mom to advance Mom's interests in the family's custody proceeding by, inter alia, using her school counseling relationship with the children to influence their testimony in the proceedings, and concealed from Plaintiff her relationship with the children and the nature of her work with them. (See, e.g., Compl. ¶¶ 58c-e, 58i, 58l (alleging that Lutz-Bennett "would discuss [with Mom] how to interfere with the outcome of the custody proceedings," would meet with the children to prepare their  testimony, would feed Mom information about Plaintiff and the children that could be used against Plaintiff in the custody proceedings, and wished Mom good luck on the morning of one custody hearing); ¶ 58(j) (stating that Lutz Bennett and Mom "regularly emailed, texted, and called each other to discuss the custody proceedings"); ¶ 34 (alleging that Lutz-Bennett, without Plaintiff's knowledge, coached E.M. to testify falsely against Plaintiff). The argument also fails to account for the Complaint's allegations that Lutz-Bennett's relationship with Mom and counseling of the children continued after she was no longer employed by the District. (See id. ¶ 67 (alleging that Lutz-Bennett continued to counsel

the children "at their mother's home after the end of the 2021-2022 school year and the termination

of her employment with [the] District"); ¶ 79 (referencing "Lutz-Bennett's continued counseling

of Plaintiff's children following her resignation of employment").)

All such allegations, taken together, allow for reasonable inferences that Lutz-Bennett

developed a personal relationship with Mom and the children that survived Lutz-Bennett's

employment with the District, and that there is therefore a likelihood that the clandestine

counseling that occurred in the context of that relationship—and any injuries flowing therefrom—

will recur in the future.  Accordingly, we reject Lutz-Bennett's argument that the Complaint does

not allow for an inference that there is such a risk, and we deny her Motion insofar as it seeks

dismissal of the claim for prospective  injunctive relief on standing grounds.

## IV.    CONCLUSION

For the foregoing reasons, we grant the Motions to Dismiss insofar as they seek dismissal

of (1) the Monell claim against the District; (2) the claims against both Defendants for violation

of the common law right to parental consent and violation of the Minors' Consent to Medical Care

Act, and (3) the claims against Lutz-Bennett for negligence and negligent infliction of emotional

distress.  Moreover, because we have dismissed all claims against the District, we dismiss as moot

the claims against it for injunctive and declaratory relief and we dismiss in District as a Defendant

in this action.[8]   The claims that will therefore proceed are those against Lutz-Bennett for (1)

---

[8]    Although Plaintiff has not requested leave to amend, we have considered whether to
permit amendment of the Monell claim and concluded that amendment would be futile. See
Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007)
(explaining that "in civil rights cases district courts must offer amendment—irrespective of
whether it is requested—when dismissing a case for failure to state a claim unless doing so would
be inequitable or futile").  Plaintiff has failed to suggest, either in his papers or at oral argument,
any basis on which he could amend the Complaint to state a cognizable Monell claim.  Moreover,
the Complaint represents the second time that Plaintiff has sought to plead a cognizable Monell
claim because Plaintiff asserted a constitutional claim against the District in his original complaint,

violation of 42 U.S.C. § 1983, (2) intentional infliction of emotional distress, (3) civil conspiracy, and (4) prospective injunctive relief.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

---

the District moved to dismiss that claim for failure to allege a policy, custom, or affirmative act by a municipal decisionmaker that could give rise to Monell liability, and Plaintiff then filed the current Complaint.  See Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." (citation omitted)).  Under these circumstances, we can only conclude that Plaintiff's Monell claim is futile, and we therefore dismiss that claim without leave to amend.